## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

CALEB L. MCGILLVARY,                    :
    Plaintiff,                          :          No. 24-cv-9507-JMY
                                        :
    vs.                                 :
                                        :
MICHAEL T.G. LONG, et al.,              :
    Defendants.                         :

### MEMORANDUM

Younge, J.                                                    February 13, 2025

Currently before the court is a motion for preliminary injunction filed by the Plaintiff, Caleb L. McGillvary.  (*Motion for Preliminary Injunction*, ECF No. 10.)  The Court finds the motion for injunctive relief appropriate for resolution without oral argument.  For the reasons set forth below, Plaintiff's motion for preliminary injunction will be denied.

## I.    FACTUAL AND PROCEDURAL HISTORY:

Plaintiff is presently incarcerated at New Jersey State Prison, where he is serving a fifty-seven-year sentence for the 2013 murder of Joseph Galfy, Jr.  *See State v. MCgillvary*, No. A-4519-18, 2021 N.J. Super. Unpub. LEXIS 1651, at *1-2 (App. Div. May 12, 2021).  Plaintiff previously filed a separate lawsuit, *McGillvary v. Scutari*, No. 23-cv-22605-JMY (D.N.J.), which was assigned to this Court.  The Court filed a series of Memorandums in connection with its decision to deny Plaintiff's request for injunctive relief in that matter, and in connection with the Court's decision to grant motions to dismiss.  *McGillvary v. Scutari*, No. 23-cv-22605-JMY, 2024 U.S. Dist. LEXIS 143034 (D.N.J. August 12, 2024) (Memorandum found at electronic filing number 81 in that case.); *McGillvary v. Scutari*, No. 23-cv-22605-JMY, 2024 U.S. Dist. LEXIS 231615 (D.N.J. December 23, 2024) (Memorandum found at electronic filing number 309 in that case.).  The Memorandums that were previously entered by this Court set forth the

relevant factual and procedural history related to Plaintiff's criminal conviction.  Therefore, it would be redundant to reiterate herein again the factual and procedural history associated with Plaintiff's criminal conviction, and the Court will refer the reader to these previous Memorandums for a discussion on those topics.

Plaintiff filed his Complaint in this matter on September 27, 2024.  Plaintiff asserts claims under the Rehabilitation Act, 29 U.S.C. § 794 and the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 to 12213 in connection with Defendants' August 5, 2024, rejection of his petition for rulemaking.  (*Complaint* ¶¶ 7, 24.)  In his petition for rulemaking, Plaintiff proposed a regulation that would require, among other things, that potential New Jersey Department of Corrections (NJDOC) employees undergo pre-employment polygraph (lie detector) tests.  (*Id.* at 20, 28, *Complaint*, Exhibit A, ECF No. 7.)  Plaintiff argues that enhanced screening, which would include polygraph testing, is necessary to prevent non-convicted sexual predators from becoming correctional officers in the NJDOC.  (*Id.*)  In this litigation, Plaintiff contends that the denial of his proposed regulation was arbitrary, capricious, and contrary to establish law.  (*Id.* at 20, 28.)

Plaintiff has now filed a motion for preliminary injunction in which he seeks immediate implementation of the proposed polygraph regulation for screening candidates who apply to become correctional officers in the NJDOC.  (*Motion for Preliminary Injunction*.)

## II.   LEGAL STANDARD:

Before granting a preliminary injunction, a district court must find that Plaintiff has established four factors:

> (1) the likelihood that the plaintiff will prevail on the merits at final hearing; (2) the extent to which the plaintiff is being irreparably harmed by the conduct complained of; (3) the extent to which the defendant will suffer irreparable harm if the

preliminary injunction is issued; and (4) [that] the public interest [weighs in favor of granting the injunction].

*Greater Phila. Chamber of Commerce v. City of Phila*., 949 F.3d 116, 133 (3d Cir. 2020) (alterations in original) (quoting *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994)); *see also Winter v. NRDC*, 555 U.S. 7, 20 (2008).  The first two factors are the "most critical," and "[i]f these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017); *accord Fulton v. City of Phila*., 922 F.3d 140, 152 (3d Cir. 2019).

Only when all four (4) factors are met should a court consider granting a plaintiff's motion for preliminary relief.  *American Tel. and Tel. Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3rd Cir. 1994).  The failure to establish any of the four (4) elements makes the granting of a preliminary injunction inappropriate.  *NutraSweet Company v. Vit–Mar Enterprises, Inc.*, 176 F.3d 151, 153 (3d Cir.1999).

Insofar as Plaintiff seeks an order that would require correctional officers with NJDOC to undergo polygraph (lie detector) tests, he is requesting a mandatory injunction that would alter the status quo.  In this regard, Plaintiff faces a "particularly heavy" burden.  *Feering Pharm., Inc. v. Watson Pharm., Inc.*, 765 F.3d 205, 219 n.13 (3d Cir. 2014); *see also Acierno v. New Castle Cty*., 40 F.3d 645, 653 (3d Cir. 1994) ("A party seeking a mandatory preliminary injunction that will alter the status quo bears a particularly heavy burden in demonstrating its necessity."). Furthermore, "A request for injunctive relief in the prison context must be viewed with great caution because of the intractable problems of prison administration." *Wesley v. Sec'y Pennsylvania Dep't of Corr.*, 569 F. App'x 123, 125 (citing *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995).

III.    **DISCUSSION:**

The Court will deny Plaintiff's request for injunctive relief because he fails to meet the requirements of the four-factor test necessary for the award of injunctive relief.  In his motion, Plaintiff seeks immediate implementation of enhanced screening measures to ensure that he does not come in contact with correctional officers who are non-convicted sexual predators. (*Plaintiff's Reply Brief* pages 8, 11-12, ECF No. 24.)  Specifically, Plaintiff requests immediate implementation of polygraph (lie detector) testing to determine the sex offender status of correctional officers and applicants who are seeking to become correctional officers.  (*Id.*) Plaintiff avers that "[He] doesn't challenge any [NJDOC] procedures whatsoever, pat-downs or otherwise.  He only challenges the [New Jersey Department of Law & Public Safety] (DLPS) licensing process with a request for reasonable accommodations."  (*Id.* page 6.)  Plaintiff further avers that "[He] requests that the [correctional officers] who conduct the [pat-down searches] be better screened by DLPS for non-convicted sexual predators."  (*Id.* page 8.)  Plaintiff argues that injunctive relief is necessary because the NJDOC's purported failure to protect him from non-convicted sexual predators has limited his access to prison services, i.e., use of the prison law library and mailroom.  (*Id.* page 7.)

A.    **Plaintiff Fails to Demonstrate a Likelihood of Success on the Merits:**

Plaintiff fails to establish that he will successfully prevail on the underlying claims that he advances in this lawsuit.  Therefore, he has failed to satisfy the first element of the four-part test used by the court when evaluating whether to issue a preliminary injunction.  In this lawsuit, Plaintiff seeks implementation of enhanced screening measures to provide protection from correctional officers who are purported sexual predators.  Plaintiff avers that he is being subject to pat-down searches by correctional officers who are sexual predators when he attempts to use

4

the prison law library and mailroom.  He then implicates his First Amendment Constitutional

rights by arguing that he is being denied access to the prison law library, the mailroom where his

mailbox is located, and other programs or services necessary to represent himself in ongoing

litigation.  (*Plaintiff's Reply Brief* page 7.)

Where a prison regulation or practice impinges on a prisoner's constitutional right, the

regulation or practice is valid if it is "reasonably related to legitimate penological interests."

*Turner v. Safley*, 482 U.S. 78, 89 (1987), cited in *DeHart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000).

In *Turner*, the Supreme Court set forth a four-factor analysis to assess the overall reasonableness

of such regulations and practices.  *Turner*, 482 U.S. at 89-91.  The reasonableness standard

involves the examination of the following four-factors: (1) whether the regulation or practice in

question furthers a legitimate governmental interest unrelated to the suppression of expression;

(2) whether there are alternative means of exercising First Amendment rights that remain open to

prison inmates; (3) whether the right can be exercised only at the cost of less liberty and safety

for guards and other prisoners; and (4) whether an alternative exists which would fully

accommodate the prisoners' rights at *de minimis* cost to valid penological interests.  *Thornburgh*

*v. Abbott*, 490 U.S. 401, 415-18 (1989); *Turner*, 482 U.S. at 89-91.  However, prison

administrators need not choose the least restrictive means possible in trying to further legitimate

penological interests.  *Thornburgh*, 490 U.S. at 411.

In this instance, the policy of not employing polygraph testing is in accordance with the

goals established by the New Jersey State Legislature when it enacted N.J.S.A. § 2c:40A-1

(Employer Requiring Lie Detector Test).  In most instances, with some general exceptions, it is a

crime in the state of New Jersey to require employees or potential employees – like correctional

officers – to undergo routine polygraph testing.  N.J.S.A. § 2c:40A-1.  Plaintiff's reliance on

federal law in support of his motion for injunctive relief is also misplaced. (*Plaintiff's Reply Brief.*) Plaintiff cites to a federal statute entitled, Employee Polygraph Protection, 29 U.S.C. §§ 2001-2009, which in actuality restricts the use of polygraph testing in employment settings. Furthermore, the federal law that Plaintiff relies upon explicitly exempts states and local governmental entities from its application. 29 U.S.C.S. § 2006. Section 2006 reads in relevant part, "This Act [29 USCS §§ 2001, *et seq.*] shall not apply with respect to the United States Government, any State or local government, or any political subdivision of a State or local government."

It is also very unlikely that Plaintiff will be able to prevail and obtain the relief sought in this lawsuit because district courts located within the Third Circuit have traditionally been very reluctant to interfere with the day-to-day operations of prison administration. *Wesley v. Sec'y Pennsylvania Dep't of Corr.*, 569 F. App'x at 125; *Robertson v. Samuels*, 593 F. App'x 91, 93 (3d Cir. 2014) (citing *Sandin v. Conner*, 515 U.S. 472, 482 (1995)); *Thorn v. Smith*, 207 F. App'x 240, 242 (3d Cir. 2006). In this instance, the NJDOC has a legitimate penological interests in hiring correctional officers to adequately staff its prisons so that the NJDOC can operate an orderly and safe prison system. In the initial stages of this litigation, many questions about the potential implications of polygraph testing remain unanswered. For example, the Court has concerns about the potential staffing shortages that could be caused by entering an injunction requiring blanket polygraph testing and the costs associated with such a program. The Court also has concerns about the reliability of polygraph testing in general juxtaposed to other measures that are already in place to screen correctional officers. These issues would need to be fully vetted before the Court could enter a mandatory injunction requiring NJDOC correctional officers to undergo polygraph testing.

6

**B.     Plaintiff Will Not Be Irreparably Harmed by Denial of Injunctive Relief:**

Plaintiff has failed to demonstrate that he will be irreparably harmed in the absence of a preliminary injunction.  To establish irreparable harm, Plaintiff must establish harm that is "actual and imminent, not merely speculative." *Eaton Corp. v. Geisenberger*, 486 F. Supp. 3d 770, 798 (D. Del. 2020) (quoting *Siemens USA Holdings, Inc., v. Geisenberger*, 17 F.4th 393 (3d Cir. 2021)).  In this instance, Plaintiff seeks a mandatory injunction which means he must meet a heightened standard.  *Feering Pharm., Inc. v. Watson Pharm., Inc.*, 765 F.3d 205, 219 n.13 (3d Cir. 2014); *see also Acierno v. New Castle Cty.*, 40 F.3d 645, 653 (3d Cir. 1994) ("A party seeking a mandatory preliminary injunction that will alter the status quo bears a particularly heavy burden in demonstrating its necessity.").

In an attempt to establish irreparable harm, Plaintiff argues that he is being denied access to the prison law library and his prison mailbox which he avers are both necessary to pursue pending litigation.  However, the record in this lawsuit, and other lawsuits that he has filed, contradicts his claim that he has been denied access to the court.  In addition to the case *sub judice*, Plaintiff is actively litigating, or has litigated, at least a dozen lawsuits in various federal district courts across the nation as follows: *McGillvary v. Scutari*, No. 23-cv-22605-JMY (D.N.J.) (asserting claims against more than 80 named defendants); *McGillvary v. Hagan*, No. 22-cv-7702-RFL (N.D. Cal.); *McGillvary v. Union County New Jersey, et al.*, No. 15-cv-8840-MCA-MAH (D.N.J.); *McGillvary v. Holom, et al.,* No. 18-cv-17487-MCA-LDW (D.N.J.); *McGillvary v. Dorsey*, No. 22-cv-5883-JNW (W.D. Wash); *McGillvary v. Kurnatowski*, No. 22-cv-8587-FLA-AGR (C.D. Cal.); *Caleb McGillvary et al., v. Netflix, et al.*, No. 23-cv-1195-JLS-SK (C.D. Cal.) (asserting claims against more that 18 named defendants); *McGillvary v. Grande*, No. 22-cv-1342-JLH (D. Del.); *McGillvary v. Galfy*, No. 21-cv-17121-MCA-CLW (D.N.J.);

*McGillvary v. Riez*, et al. 22-cv-6430-MAS-JBD (D.N.J.); *McGillvary v. Davis*, No. 22-cv-4185-MRH (D.N.J.); *McGillvary v. State of New Jersey*, No. 17-cv-10215-MCA (D.N.J.); and *McGillvary v. Rolling Stones, LLC, et al.*, No. 23-cv-10428-DEH, 2024 U.S. Dist. LEXIS 105572 (S.D.N.Y. 2024).  Plaintiff has also pursued claims in the Third Circuit Court of Appeals.  *Caleb McGillvary In re: Caleb McGillvary*, No. 22-op-3068 (3d Cir. 2023) (Petition for Writ of Mandamus), *In re: Caleb L. McGillvary v. et al.*, 2023-op-1773 (3d Cir. 2023) (Petition for Writ of Mandamus).

Therefore, Plaintiff has failed to establish the purported irreparable harm of being denied access to the court through an inability to access the prison law library or mail system.

**C.    Balance of the Equities and the Public Interest:**[1]

The first two factors for evaluating whether to enter a preliminary injunction weigh in favor of denying Plaintiff's request for relief.  Therefore, the Court can stop its analysis at this point, and it does not need to evaluate the equities and public interest factors.  However, the correctional officers and inmates in the NJDOC have an interest in physical safety that is created by adequately staffed and well-maintained facilities.  Entry of a mandatory injunction requiring polygraph testing could interfere with the ability of the NJDOC to staff its facilities and meet budgetary requirements.  As previously mentioned, polygraph testing is contrary to public policy as set forth in New Jersey state statute.  Therefore, the equities and public interests weigh against injunctive relief.

---

[1] The Court consolidates its analysis of the last two factors because "[w]here the government is a party, the last two factors in the preliminary injunction analysis, namely the balance of the equities and the public interest, merge." *City of Phila. v. Sessions*, 28 F. Supp. 3d 579, 657 (E.D. Pa. 2017); *see also Nken v. Holder*, 556 U.S. 418, 435 (2009).

**IV.    CONCLUSION:**

For these reasons, Plaintiff's motion for preliminary injunction will be denied.

**BY THE COURT**:

   /s/ John Milton Younge
Judge John Milton Younge